## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Crim**inal Case No. 2:24-cr-20070-DDC-TJJ |
| **Plaintiff,** | **18 U.S.C. § 1962(d) (RICO Conspiracy)** |
| **v.** | **29 U.S.C. § 501(c) (Theft from a Labor Organization)** |
| **NEWTON JONES,** **WILLIAM CREEDEN,** **KATERYNA (KATE) JONES,** **WARREN FAIRLEY,** **LAWRENCE McMANAMON,** **KATHY STAPP, and** **CULLEN JONES** | **18 U.S.C. § 1343, 1349 (Wire Fraud Conspiracy)** |
| | **18 U.S.C. § 664 (Theft from Pension and Welfare funds)** |
| **Defendants.** | **18 U.S.C. § 1347, 1349 (Health Care Fraud Conspiracy)** |
| | **18 U.S.C. § 669 (Theft in connection with Health Care)** |
| | **18 U.S.C. § 2** |

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times material to this Indictment:

### A. The International Brotherhood of Boilermakers Union

1.  The International Brotherhood of Boilermakers Union, Iron Ship Builders,

Blacksmith, Forgers and Helpers ("the Boilermakers Union") is an international labor

1

organization with more than 44,000 members consisting of skilled tradespersons and allied workers who fabricate and maintain steam boilers and engines for industrial uses in heavy manufacturing, shipbuilding, utility, rail, metal work, and construction industries in the United States and Canada. The Boilermakers Union is headquartered in Kansas City, Kansas.

2. The Boilermakers Union represents members in collective bargaining with employers throughout the United States and Canada with respect to wages, hours, grievances, and other terms and conditions of employment. Pursuant to that representation, the Boilermakers Union has executed collective bargaining agreements with employers with jurisdiction covering work performed in several states and Canadian provinces.

3. The Boilermakers Union is governed by a constitution adopted at a convention of its delegates held every five years. The most recent version of the Boilermakers Union Constitution was adopted at the Boilermakers Union Convention in 2021 ("the Boilermakers Union Constitution").

4. Article 4 of the Boilermakers Union Constitution provides for several elective offices to be chosen by vote of the delegates to the Boilermakers Union convention including International President, International Secretary-Treasurer, and five (5) International Vice Presidents. The International President and five vice-presidents form the Executive Council of the Boilermakers Union.

2

5. The Boilermakers Union qualifies as a "labor organization" under the Labor Management Reporting and Disclosure Act ("LMRDA"), Title 29, United States Code, Section 402(i), and is subject to the various provisions of the LMRDA governing "labor organizations."

6. Defendant NEWTON JONES was appointed International President of the Boilermakers Union in 2003 and was reelected as International President at the 2006, 2011, 2016, and 2021 conventions of the Boilermakers Union. On June 2, 2023, Defendant NEWTON JONES was removed as International President and expelled as a member of the Boilermakers Union following a finding pursuant to Article 17 of the Boilermakers Constitution that he was guilty of financial misconduct.

7. Defendant WILLIAM CREEDEN was appointed International Secretary-Treasurer of the Boilermakers Union in 2005, and was reelected as International Secretary-Treasurer at the 2006, 2011, 2016, and 2021 conventions of the Boilermakers Union. In August 2023, CREEDEN resigned as an officer and employee of the Boilermakers Union.

8. Defendant KATERYNA (KATE) JONES, who is married to Defendant NEWTON JONES, held employment positions with the Boilermakers Union, including Special Assistant to the International President.

3

9.    Defendant WARREN FAIRLEY served as an International Vice-President in the Boilermakers Union from at least 2013 until January 2023, and as International President of the Boilermakers Union from August 2023 to the present.

10.    Defendant LAWRENCE McMANAMON served as International Vice-President in the Boilermakers Union from 1990 to August 2023.

11.    Defendant KATHY STAPP served as Director of Human Resources and/or Special Assistant to the International Secretary Treasurer from at least 2013 until August 2023, and as International Secretary-Treasurer from August 2023 to the present.

12.    Defendant CULLEN JONES, son of Defendant NEWTON JONES, held employment positions with the Boilermakers Union periodically from 2009 through August 2023.

13.    Coconspirator One served as Executive Director of Industrial Sector Operations ("ISO") of the Boilermakers Union from at least 2015 through 2018. From 2016 to 2018, Coconspirator One also served as Special Assistant to the International President of the Boilermakers Union, Defendant NEWTON JONES. From 2018 to November 1, 2022, Coconspirator One also served as Chief of Staff of the Boilermakers Union.  From 2018 to 2022, Coconspirator One held all three positions simultaneously and reported directly to Defendant NEWTON JONES.

14.    The Boilermakers Union maintained a health care plan for its full-time

4

employees and their dependents (the "Boilermakers Union Health Care Plan") in order to provide them with medical benefits.   Only full-time employees of the Boilermakers Union who were regularly scheduled to work 30 hours per week, and their dependents, were eligible to participate in the Boilermakers Union Health Care Plan.

15.   The Boilermakers Union Health Care Plan constituted a "health care benefit program" within the meaning of Title 18, United States Code, Sections 24(b), 669, 1347, and 1349.

16.   The Boilermakers Union offered a defined benefit pension plan for its full-time employees and members, the "Boilermaker-Blacksmith National Pension Trust", in order to provide them with pension benefits in retirement.   Only full-time employees of the Boilermakers Union were eligible to participate in the Boilermaker-Blacksmith National Pension Trust and benefits from that plan are calculated based upon the hours participants actually worked.   The Boilermaker-Blacksmith National Pension Trust, an employee pension benefit plan, was subject to Title I of the Employee Retirement Income Security Act of 1974.

## B. **The Bank of Labor**

17.    The Bank of Labor is a banking institution headquartered in Kansas City, Kansas.   The Boilermakers Union owned shares of stock in the Bank of Labor's holding company and held several accounts at the Bank of Labor.   The Bank of Labor qualified as a party dealing with the Boilermakers Union within the meaning of Title 29, United States Code, section 432(a)(4).

19.    From on or about 2009 until August 2023, Defendant NEWTON JONES served as Chairman of the Board of Directors of the Bank of Labor and held the title Chief Executive Officer, a salaried employment position.

20.    From on or about 2009 until August 2023, Defendant WILLIAM CREEDEN served as a member of the board of directors of the Bank of Labor and held the title Senior Executive Vice-President of the Bank of Labor, a salaried employment position.

21.    The Bank of Labor offered a defined-contribution retirement plan for its full-time employees (the "Bank of Labor Retirement Plan") in order to provide them with pension benefits in retirement.   Only full-time employees of the Bank of Labor were eligible to participate in the Bank of Labor 401(k) Plan.   The Bank of Labor Retirement Plan, an employee pension benefit plan, was subject to Title I of the Employee Retirement Income Security Act of 1974.

## C. **Duties Upon Defendants**

22.  Pursuant to the LMRDA (Title 29, United States Code, Section 501(a)), "officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group." As officers, agents, and/or representatives of the Boilermakers Union, Defendants NEWTON JONES, WILLIAM CREEDEN, KATERYNA JONES, WARREN FAIRLEY, KATHY STAPP, LAWRENCE McMANAMON, and Coconspirator One were subject to Section 501(a) of the Labor Management Reporting and Disclosure Act, Title 29, United States Code.   In such capacities, those persons occupied positions of trust in relation to the Boilermakers Union and its members as a group, and were subject to several fiduciary duties pursuant to section 501(a) including:   1) to hold the money and property of the Boilermakers Union solely for the benefit of the organization and its members; 2)  to manage, invest, and expend the same in accordance with the Boilermakers Union constitution and bylaws and any resolutions of the governing bodies thereunder; 3) to refrain from dealing with the Boilermakers Union as an adverse party or on behalf of an adverse party in any matter connected with their duties; 4) to refrain from holding or acquiring any pecuniary or personal interest which conflicts with the interests of the Boilermakers Union; and 5) to account to the Boilermakers Union for any profit received by them in whatever capacity in connection with transactions conducted by them or under their direction on behalf of such organization.

23.  Title 29, United States Code, section 432(a)(4) of the LMRDA requires

every officer and employee of a labor organization to file an annual disclosure report—known as a LM-30 report—with the United States Department of Labor which lists and describes for the preceding year:

> any income or any other benefit with monetary value (including reimbursed expenses) which he or his spouse or minor child directly or indirectly derived from, a business any part of which consists of buying from, or selling or leasing directly or indirectly to, or otherwise dealing with such labor organization.

Defendants NEWTON JONES and WILLIAM CREEDEN, as officers and employees of the Boilermakers Union not performing exclusively clerical or custodial duties, were subject to the reporting requirements within Section 432(a)(4).

24.    As members of the Boilermakers Union's Executive Council, Defendants NEWTON JONES, WILLIAM CREEDEN, WARREN FAIRLEY and LAWRENCE McMANAMON were subject to the Boilermakers Constitution's requirement in Article 5.2 that the Executive Council supervise and authorize all expenditures deemed necessary to effectuate or accomplish the objectives of this Boilermakers Union, as set forth in Article 1.2 and other applicable provisions of the Union's Constitution and for the benefit of the Boilermakers Union.

25.    As International President and Secretary Treasurer of the Boilermakers Union, respectively, Defendants NEWTON JONES and WILLIAM CREEDEN were members of the Boilermakers Union's Board of Trustees and were required to manage, control, and invest the funds of the Boilermakers Union in conformity with the

fiduciary standards for investments required in Article 6.3 of the Boilermakers Constitution and "subject to the control and supervision of the Executive Council."

26.     As International President of the Boilermakers Union, Defendant NEWTON JONES, was required to enforce all laws within the Boilermakers Constitution and all policies of the Boilermakers Union adopted by its convention and the Executive Council, and to make expenditures as are necessary for the protection of its interests and the achievement of its objectives as approved by the Executive Council.

27.     As officers and employees of the Boilermakers Union, Defendants NEWTON JONES and WILLIAM CREEDEN were subject to the Boilermakers Union Conflict of Interest Policy which provides that such persons:

> shall disclose all real or apparent conflicts of interest that they discover or that have been brought to their attention in connection with the International Brotherhood's activities.

The policy further requires written notice of such conflicts on an annual basis and entry of such conflicts in the minutes of the Executive Council.  In addition, the Boilermakers Union Conflict of Interest Policy directs that an individual possessing such a real or apparent conflict must abstain from participating in any discussions or deliberations with respect to the subject of the conflict, or using personal influence to affect deliberations, making motions, voting, executing agreements, or "taking similar actions on behalf of the organizations where the conflict of interest might pertain by law, agreement, or otherwise."

9

## COUNT ONE

### (Racketeering Conspiracy--18 U.S.C. § 1962(d))

1.   The General Allegations numbered 1 through 27 inclusively are realleged and expressly incorporated herein.

### A. The Enterprise

2.   At all times relevant to this Indictment, certain officers, employees, members, and associates of the Boilermakers Union, including Defendants NEWTON JONES, WILLIAM CREEDEN, KATERYNA (KATE) JONES, WARREN FAIRLEY, LAWRENCE MCMANAMON, CULLEN JONES, KATHY STAPP, and others known and unknown to the Grand Jury, constituted an enterprise, as defined in Title 18, United States Code, Section 1961(4), namely a group of individuals associated in fact (hereinafter referred to as the "Jones Enterprise").  This is the same enterprise referred to as the "Boilermakers Enterprise" in the Information charging Coconspirator One.   The Jones Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.   The Jones Enterprise was engaged in, and its activities affected, interstate and foreign commerce.

### B. Purposes of the Jones Enterprise

3.   The purposes of the Jones Enterprise included, but were not limited to, the

following:

a.   Enriching members and associates of the Jones Enterprise through, among other things, embezzlement from union funds, wire fraud, and embezzlement from pension and welfare funds; and

b.   Preserving and protecting the power and profits of the Jones Enterprise through the use of embezzlement from union funds, wire fraud, and embezzlement from pension and welfare funds.

## C.   Roles of the Defendants

4.   Defendant NEWTON JONES was a primary figure within the Jones Enterprise, as well as an officer, employee, and member of the Boilermakers Union. Beginning in or about January 2009 and continuing to August 2023, Defendant JONES directed and supervised the activities of the Jones Enterprise as International President of the Boilermakers Union and Chairman of the Board of the Bank of Labor.

5.   Defendant WILLIAM CREEDEN was a primary figure within the Jones Enterprise, as well as an officer, employee, and member of the Boilermakers Union. Beginning in or about January 2009 and continuing to August 2023, Defendant WILLIAM CREEDEN directed and supervised the activities of the Jones Enterprise as International Secretary-Treasurer of the Boilermakers Union and Senior Executive Vice-President of the Bank of Labor.

6.   Defendant WARREN FAIRLEY was a primary figure within the Jones Enterprise, as well as an officer, employee, and member of the Boilermakers Union. Beginning in or about January 2009 until August 2023, Defendant WARREN

FAIRLEY participated in the activities of the Jones Enterprise as International Vice-President of the Boilermakers Union. From August 2023 through August 2024, WARREN FAIRLEY participated in the activities of the Jones Enterprise as the International President of the Boilermakers Union.

7.    Defendant LAWRENCE McMANAMON was a primary figure within the Jones Enterprise, as well as an officer, employee, and member of the Boilermakers Union.    Beginning in or about January 2009 until August 2023, Defendant LAWRENCE McMANAMON participated in the activities of the Jones Enterprise as International Vice-President of the Boilermakers Union.

8.    Defendant KATHY STAPP was a primary figure within the Jones Enterprise, as well as an employee and member of the Boilermakers Union.    Beginning in or about January 2009 until August 2023, Defendant KATHY STAPP participated in the activities of the Jones Enterprise, as Director of Human Resources and Special Assistant to the International Secretary Treasurer.    From August 2023 through August 2024, KATHY STAPP participated in the activities of the Jones Enterprise as the International Secretary Treasurer of the Boilermakers Union.

9.    Defendant KATERYNA (KATE) JONES was a primary figure within the Jones Enterprise, as well as an employee and member of the Boilermakers Union. Beginning in or about January 2009 until August 2023, Defendant KATERYNA (KATE) JONES participated in the activities of the Jones Enterprise as Special

Assistant to the International President of the Boilermakers Union.

10.   Defendant CULLEN JONES was a primary figure within the Jones Enterprise, as well as an employee and member of the Boilermakers Union.   Beginning in or about January 2009 until August 2023, Defendant CULLEN JONES participated in the activities of the Jones Enterprise.

### D. Means and Methods of the Enterprise

11.   The means and methods by which the Defendants and other members and associates of the Jones Enterprise conducted and participated in the conduct of the enterprise included the following:

a.   Members and associates of the Jones Enterprise sought to dominate and control operations of the Boilermakers Union through the commission of theft from the Boilermakers Union in order to operate the Boilermakers Union so as to enrich themselves and other members and associates of the enterprise;

b. Members and associates of the Jones Enterprise failed to expend money and property of the Boilermakers Union with the proper authorization as required by the Boilermakers Constitution; and

c.   Members and associates of the Jones Enterprise failed to supervise and authorize expenditures deemed necessary to effectuate and accomplish the objectives of the Boilermakers Union, as set forth in Boilermakers Constitution Article 1.2, and other applicable provisions of the Boilermakers Constitution, or for its benefit, contrary

to Article 5.2 of the Boilermakers Constitution.

### E. **The Racketeering Conspiracy**

12.   From at least on or about January 2009 and continuing to on or about August 2024, in the District of Kansas, and elsewhere, Defendants NEWTON JONES, WILLIAM CREEDEN, KATERYNA JONES, WARREN FAIRLEY, LAWRENCE MCMANAMON, CULLEN JONES, and KATHY STAPP, together with others, being persons employed by and associated with the Jones Enterprise described in paragraph 2 of this Indictment, which enterprise engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly, intentionally and unlawfully combine, conspire, confederate, and agree together and with each other, to violate Section 1962(c) of Title 18, United States Code, that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Jones Enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5).

13.   The pattern of racketeering activity through which the Defendants agreed to conduct the affairs of the enterprise consisted of multiple acts indictable under Title 29, United States Code, Section 501(c) (relating to embezzlement from union funds); Title 18, United States Code, Section 1343 (relating to wire fraud); and Title 18, United States Code, Section 664 (relating to embezzlement from pension and welfare funds).

14.   It was a part of the conspiracy that each Defendant agreed that a conspirator

would commit at least two acts of racketeering in the conduct of the affairs of the Jones Enterprise.

## F. Manner and Means of the Racketeering Conspiracy

15.    Among the manner and means by which the Defendants and other conspirators agreed to conduct and participate in the conduct of the affairs of the Jones Enterprise included, among others, the following:

16.    It was further part of the conspiracy that members and associates of the Jones Enterprise and other conspirators would seek to dominate and control the operations of the Boilermakers Union through the commission of embezzlement from union funds, wire fraud, and embezzlement from pension and welfare funds so as to enrich themselves and other members of the conspiracy.

17.    It was further part of the conspiracy that members and associates of the Jones Enterprise and other conspirators would preserve their positions in the Boilermakers Union by ensuring that all international officers were selected for their positions by the International President rather than having them face an open and contested election for those positions among the membership, thereby ensuring that all international officers owed their positions as officers to the International President, Defendant NEWTON JONES.

18.    It was further part of the conspiracy that members and associates of the Jones Enterprise and other conspirators would preserve their positions in the

16

Boilermakers Union by ensuring that all incumbent international officers stood for reelection in a single slate headed by the incumbent International President, Defendant NEWTON JONES, and by means of a public voice vote of the delegates to the convention of the Boilermakers Union, rather than a secret vote of the delegates or the union's membership, so as to minimize any opposition to the International President, Defendant NEWTON JONES, and the slate of incumbent officers including Defendants WILLIAM CREEDEN, WARREN FAIRLEY, and LAWRENCE MCMANAMON.

19.  It was further part of the conspiracy that members and associates of the Jones Enterprise and other conspirators would abuse their responsibilities as officers and employees of the Boilermakers Union by failing to hold the money and property of the Boilermakers Union solely for the benefit of the Boilermakers Union and its members and failing to expend the money and property in accordance with the Boilermakers Union Constitution and any resolutions of its governing bodies.

20.  It was further part of the conspiracy that Defendants NEWTON JONES, WILLIAM CREEDEN, KATHY STAPP, LAWRENCE McMANAMON, WARREN FAIRLEY and other members and associates of the Jones Enterprise and other conspirators would deal with the Boilermakers Union as an adverse party or on behalf of an adverse party in matters connected with their duties and would fail to account to the Boilermakers Union and its membership for any profit received by them

17

in connection with transactions conducted by them of the Boilermakers Union.

21.  It was further part of the conspiracy that Defendants NEWTON JONES, WILLIAM CREEDEN, KATHY STAPP, LAWRENCE McMANAMON, WARREN FAIRLEY and other members and associates of the Jones Enterprise and other conspirators would adhere to the terms of Boilermakers Constitution and applicable resolutions when it permitted them to enrich themselves through expenditure of union funds but would ignore or violate the terms of Boilermakers Constitution and applicable resolutions when it restricted them from enriching themselves through expenditure of union funds.

22.  It was further part of the conspiracy that Defendants WILLIAM CREEDEN, KATHY STAPP, LAWRENCE McMANAMON, WARREN FAIRLEY and other members and associates of the Jones Enterprise and other conspirators would acquiesce in allowing Defendant NEWTON JONES to spend the funds of the Boilermakers Union as NEWTON JONES saw fit, including expenditures which were not necessary to achieve the union's interests or for its benefit.

23.  It was further part of the conspiracy that Defendants NEWTON JONES, WILLIAM CREEDEN, KATHY STAPP, LAWRENCE McMANAMON, WARREN FAIRLEY and other members and associates of the Jones Enterprise and other conspirators would fail to review the expenses of Defendants NEWTON JONES, KATERYNA JONES, and WILLIAM CREEDEN as required by Article 5.2

18

of the Boilermakers Union Constitution.

24.   It was further part of the conspiracy that Defendants NEWTON JONES, WILLIAM CREEDEN, KATHY STAPP, LAWRENCE McMANAMON, WARREN FAIRLEY and other members and associates of the Jones Enterprise and other conspirators would fail to supervise and authorize all expenditures deemed necessary to effectuate and accomplish the objectives of the Boilermakers Union, as set forth in Constitution Article 1.2, and other applicable provisions of the Boilermakers Constitution, or for its benefit, all contrary to Article 5.2 of the Boilermakers Constitution.

25.   It was further part of the conspiracy that Defendants WILLIAM CREEDEN, KATHY STAPP, LAWRENCE McMANAMON, WARREN FAIRLEY and other members and associates of the Jones Enterprise and other conspirators would approve and execute expenditures made by, and directed to be made by, Defendant NEWTON JONES knowing that those expenditures were not necessary to achieve the union's interests or for its benefit.

26.   It was further part of the conspiracy that members and associates of the Jones Enterprise and other conspirators would hold Executive Council meetings in expensive locations including Paris, France, Copenhagen, Denmark, Key West, Florida, and Maui and Wailea, Hawaii, and invite up to thirty-eight (38) persons, including family members and outside guests, to attend those meetings all at the Boilermakers Union

19

expense.

27.  It was further part of the conspiracy that Defendants NEWTON JONES, WILLIAM CREEDEN, KATERYNA JONES, LAWRENCE McMANAMON, WARREN FAIRLEY and CULLEN JONES and other members and associates of the Jones Enterprise and other conspirators engaged in unauthorized international travel to Europe, Asia, South America, and Australia, which included first class airline tickets, lavish hotel stays, expensive restaurant meals and wines, and entertainment worth more than five million dollars, all of which was contrary to the terms of the Boilermakers Constitution and applicable resolutions and which were otherwise not necessary to achieve the union's interests or for its benefit.

28.  It was further part of the conspiracy that Defendants NEWTON JONES and KATERYNA JONES and other members and associates of the Jones Enterprise and other conspirators would purchase hundreds of unauthorized restaurant meals in their hometown and assorted merchandise, worth hundreds of thousands of dollars, contrary to the terms of the Boilermakers Constitution and which were otherwise not necessary to achieve the interests of the Boilermakers Union or for its benefit.

29.  It was further part of the conspiracy that Defendants NEWTON JONES, WILLIAM CREEDEN, KATERYNA JONES, KATHY STAPP and other members and associates of the Jones Enterprise and other conspirators would enrich each other and others by paying Defendant KATERYNA JONES back wages for two years

totaling more than $100,000 under the guise that she was working for the Boilermakers Union while she was residing in Ukraine and when, in fact, she was not performing any productive work for the Boilermakers Union.

30.   It was further part of the conspiracy that Defendants NEWTON JONES, WILLIAM CREEDEN, KATHY STAPP and other members and associates of the Jones Enterprise and other conspirators would enrich each other and others by placing members of the Jones Enterprise and their family members and friends in lucrative positions of employment within the Boilermakers Union with full benefits and reimbursed expenses when the individuals placed in those positions were not required to work fulltime, and did not perform productive work commensurate with fulltime employment, with their titles, and with their salaries, which otherwise were far in excess of market compensation for those positions.

31.   It was further part of the conspiracy that Defendants NEWTON JONES, WILLIAM CREEDEN, KATHY STAPP and other members and associates of the Jones Enterprise and other conspirators would enrich each other and others by enrolling individuals who performed little or no work in the Boilermakers Union Health Care Plan to provide them and their dependents and family members with health insurance contrary to eligibility rules for the Boilermakers Union Health Care Plan.

32.   It was further part of the conspiracy that Defendants KATERYTNA JONES and CULLEN JONES and other members and associates of the Jones

Enterprise and other conspirators, and their dependents and family members, would receive medical care reimbursements from the Boilermakers Union Health Care Plan when they were not eligible to be on that plan and receive those reimbursements.

33.   It was further part of the conspiracy that Defendants NEWTON JONES, WILLIAM CREEDEN, KATHY STAPP and other members and associates of the Jones Enterprise and other conspirators would enrich themselves and others by granting hundreds of thousands of dollars in relocation, rent, and tuition benefits to members of the Jones Enterprise and their family members from the funds of the Boilermakers Union contrary to the terms of the Boilermakers Constitution and applicable resolutions and which were otherwise not necessary to achieve the union's interests or for its benefit.

34.   It was further part of the conspiracy that members and associates of the Jones Enterprise and other conspirators would enrich themselves by sending Defendant CULLEN JONES to film school in Vancouver, Canada, paying all his living expenses, including a salary and per diem stipend, all at Boilermakers Union expense, contrary to the terms of the Boilermakers Constitution and applicable resolutions and which were otherwise not necessary to achieve the union's interests or for its benefit.

35.   It was further part of the conspiracy that Defendants NEWTON JONES, WILLIAM CREEDEN, KATHY STAPP and members and associates of the Jones Enterprise and other conspirators would enrich themselves by paying relocation and

22

living expenses for four members of the Jones family--including rental payments for apartments for more than a year--all at Boilermakers Union expense, contrary to the terms of the Boilermakers Constitution and applicable resolutions and which were otherwise not necessary to achieve the union's interests or for its benefit.

36.    It was further part of the conspiracy that Defendants NEWTON JONES, WILLIAM CREEDEN, KATHY STAPP, LAWRENCE McMANAMON, WARREN FAIRLEY and other members and associates of the Jones Enterprise and other conspirators would enrich themselves by failing to enforce a duly adopted policy of the Boilermakers Union limiting cash payment in lieu of vacation to two weeks per year, thereby enabling members of the Jones Enterprise and others to receive cash payouts for unused vacation contrary to that policy and for allotted vacation hours which they had already used.

37.    It was further part of the conspiracy that Defendants NEWTON JONES, WILLIAM CREEDEN, KATERYNA JONES, LAWRENCE McMANAMON, WARREN FAIRLEY and CULLEN JONES and other members and associates of the Jones Enterprise and other conspirators would falsely request and receive cash payouts for unused vacation hours totaling millions of dollars when they had already used those vacation hours but had failed to notify the Boilermakers Union that they had done so, and had failed to keep accurate record of their respective vacation hours, contrary to the terms of the Boilermakers Constitution and applicable policies and which payouts

23

were otherwise not necessary to achieve the union's interests or for its benefit.

38.   It was further part of the conspiracy that Defendants NEWTON JONES and WILLIAM CREEDEN and other members and associates of the Jones Enterprise would use the funds of the Boilermakers Union to secretly review the emails and other activities of officers and employees of the Boilermakers Union in order assist Defendants NEWTON JONES and LAWRENCE McMANAMON to defend themselves from internal charges within the Boilermakers Union and which funds were otherwise not necessary to achieve the union's interests or for its benefit.

39.   It was further part of the conspiracy that Defendants NEWTON JONES and WILLIAM CREEDEN would disband the Boilermakers Union Board of Trustees and unilaterally manage the financial assets of the Boilermakers Union without consulting the Executive Council as required by section 501(a) of the LMRDA; Articles 5.2 and 6 of the Boilermakers Constitution; and the Boilermakers Union's Conflict of Interest Policy.

40.   It was further part of the conspiracy that Defendants NEWTON JONES and WILLIAM CREEDEN would extend $7 million dollars in loans of Boilermakers Union funds to the Bank of Labor without consulting the Board of Trustees and Executive Council as required by section 501(a) of the LMRDA; Articles 5.2 and 6 of the Boilermakers Constitution; and the Boilermakers Union Conflict of Interest Policy and which loans were otherwise not necessary to achieve the union's interests or for its

benefit.

41. It was further part of the conspiracy that Defendants NEWTON JONES and WILLIAM CREEDEN would leverage the Boilermakers Union's partial ownership in the Bank of Labor to obtain executive-level employment positions for themselves with the Bank of Labor.

42. It was further part of the conspiracy that Defendants NEWTON JONES and WILLIAM CREEDEN would enrich themselves by demanding full-time employment with the Bank of Labor including salaries exceeding $400,000 per year, yearly bonuses, 401(k) plan contributions, coverage under two life insurance policies, cash payments for unused personal time, and "golden parachute" agreements promising one-year's' salary, plus $250,000 upon retirement for which Defendants NEWTON JONES and WILLIAM CREEDEN performed little or no services as employees for the Bank of Labor.

43. It was further part of the conspiracy that Defendants NEWTON JONES and WILLIAM CREEDEN would enrich themselves by collecting more than $3,400,000 each over the course of thirteen (13) years from the Bank of Labor under the guise of full-time employment for which Defendants NEWTON JONES and WILLIAM CREEDEN performed no services for the Bank of Labor.

44. It was further part of the conspiracy that Defendants NEWTON JONES and WILLIAM CREEDEN would receive hundreds of thousands of dollars in

retirement payments from the Bank of Labor Retirement Plan when they were not eligible to participate in that plan, and were not eligible to receive those payments from the Bank of Labor Retirement Plan.

45.   It was further part of the conspiracy that Defendants NEWTON JONES, WILLIAM CREEDEN, KATERYNA JONES, and CULLEN JONES and other members and associates of the Jones Enterprise and other conspirators would represent to the Boilermaker-Blacksmith National Pension Trust that they worked a number of hours in excess of what they actually worked, thereby increasing their individual vesting credits in the Boilermaker-Blacksmith National Pension Trust and increasing the potential pension benefits they would receive from the Boilermaker-Blacksmith National Pension Trust upon reaching retirement age.

46.   It was further part of the conspiracy Defendants NEWTON JONES and WILLIAM CREEDEN would receive disbursements from the Boilermaker-Blacksmith National Pension Trust to which they were not entitled by representing that they had worked forty (40) hours to per week for decades when, in fact, Defendants NEWTON JONES and WILLIAM CREEDEN spent weeks at home not working, unable to work because of illness, or on vacations which they did not report to the Boilermakers Union.

All in violation of Title 18, United States Code, Sections 1962(d).

## COUNTS TWO through THIRTY-THREE

### (29 U.S.C. § 501(c))
### (Embezzlement from a Labor Organization)
### (International Travel)

1.  The allegations contained in paragraphs 1 through 27 of the General Allegations of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

2.  From on or about September 2019 to on or about October 2023, in the District of Kansas and elsewhere, Defendants NEWTON JONES, WILLIAM CREEDEN, KATERYNA JONES, WARREN FAIRLEY, LAWRENCE McMANAMON, and KATHY STAPP, aided and abetted by each other and by others known to the grand jury, while employed directly and indirectly by the Boilermakers Union, and others known and unknown to the grand jury, did embezzle, steal and unlawfully and willfully abstract and convert to their own use and to use of others the moneys, property and other assets of said labor organization, the Boilermakers Union, to wit: approximately $1,550,000 in international travel expenses, as follows:

| Count | Defendant(s) | Approximate Dates | Destination(s) | Traveler(s) | Estimated Cost |
|---|---|---|---|---|---|
| 2 | NEWTON JONES, WILLIAM CREEDEN, and KATHY STAPP | Sept. 6-14, 2019 | United Arab Emirates, Belgium, and Netherlands | One employee of Boilermakers Union | $15,000 |
| 3 | NEWTON JONES, WILLIAM CREEDEN, and KATHY STAPP | Sept. 8-14, 2019 | Stuttgart, Germany | Coconspirator One and one additional employee of the | $30,000 |

| | | | | Boilermakers Union | |
|---|---|---|---|---|---|
| 4 | NEWTON JONES, WILLIAM CREEDEN, and KATHY STAPP | Oct. 6-11, 2019 | Dusseldorf, Germany | Three employees of the Boilermakers Union | $45,000 |
| 5 | NEWTON JONES, WILLIAM CREEDEN, KATHY STAPP, and WARREN FAIRLEY | Nov. 2-9, 2019 | Marseille, France, Steinbach Germany | WARREN FAIRLEY, Coconspirator One, and one additional employee of the Boilermakers Union | $45,000 |
| 6 | NEWTON JONES, WILLIAM CREEDEN, KATHY STAPP, and KATERYNA JONES | Nov. 5-26, 2019 | Odessa, Ukraine, Milan, and Verona, Italy | NEWTON JONES and KATERYNA JONES | $30,000 |
| 7 | NEWTON JONES, WILLIAM CREEDEN, KATHY STAPP, and WARREN FAIRLEY | Nov. 16-23, 2019 | Geneva, Switzerland | WARREN FAIRLEY, Coconspirator One, and four additional employees of the Boilermakers Union | $90,000 |
| 8 | NEWTON JONES, WILLIAM CREEDEN, and KATHY STAPP | Nov. 16-20, 2019 | Geneva, Switzerland | Coconspirator One, and four additional employees of the Boilermakers Union | $75,000 |
| 9 | NEWTON JONES, WILLIAM CREEDEN, KATHY STAPP, and WARREN FAIRLEY | Nov. 18-23, 2019 | Geneva, Switzerland | WARREN FAIRLEY and Coconspirator One | $30,000 |
| 10 | NEWTON JONES, WILLIAM CREEDEN, KATHY STAPP, KATERYNA JONES, WARREN FAIRLEY, and LAWRENCE McMANAMON | Dec. 1-8, 2019 | Madrid, Spain | NEWTON JONES, KATERYNA JONES, WARREN FAIRLEY, LAWRENCE McMANAMON, Coconspirator | $165,000 |

| | | | | One, and six additional employees of the Boilermakers Union | |
|---|---|---|---|---|---|
| 11 | NEWTON JONES, WILLIAM CREEDEN, KATHY STAPP KATERYNA JONES, WARREN FAIRLEY, and LAWRENCE MCMANAMON | Jan. 31, 2020-Feb. 10, 2020 | London, England | NEWTON JONES, KATERYNA JONES, WILLIAM CREEDEN, WARREN FAIRLEY, LAWRENCE MCMANAMON, Coconspirator One, and five additional employees of the Boilermakers Union | $165,000 |
| 12 | NEWTON JONES, WILLIAM CREEDEN, and KATHY STAPP | Feb. 20, 2020 | New Zealand | Employee Number One and Employee Number Two | $30,000 |
| 13 | NEWTON JONES, WILLIAM CREEDEN, and KATHY STAPP | Feb. 27 - Mar. 1, 2020 | Italy to Marco Island, FL | One official of an Italian union of electrical workers | $15,000 |
| 14 | NEWTON JONES, WILLIAM CREEDEN, and KATHY STAPP | Aug. 13, 2021 | Italy | NEWTON JONES | $15,000 |
| 15 | NEWTON JONES, WILLIAM CREEDEN, and KATHY STAPP | Oct. 18-23, 2021 | Bremen, Germany | Three employees of the Boilermakers Union | $45,000 |
| 16 | NEWTON JONES, WILLIAM CREEDEN, KATHY STAPP, KATERYNA JONES, WARREN FAIRLEY, and LAWRENCE MCMANAMON | Oct. 31-Nov. 12, 2021 | London, Great Britain, Glascow, Scotland and Amsterdam, Netherlands | NEWTON JONES, KATERYNA JONES, WILLIAM CREEDEN, WARREN FAIRLEY, LAWRENCE MCMANAMON | $180,000 |

| | | | | , Coconspirator One, Employee Number One, Employee Number Two, and four additional employees and guest of the Boilermakers Union | |
|---|---|---|---|---|---|
| 17 | NEWTON JONES, WILLIAM CREEDEN, and KATHY STAPP | Mar.15-19, 2022 | Andros Island Bonefish Club, Bahamas | WILLIAM CREEDEN | $15,000 |
| 18 | NEWTON JONES, WILLIAM CREEDEN, and KATHY STAPP | Mar. 27-April 4, 2022 | Geneva, Switzerland | Two employees of the Boilermakers Union | $30,000 |
| 19 | NEWTON JONES, WILLIAM CREEDEN, and KATHY STAPP | Apr. 17-26, 2022 | Rome/Paestum, Italy | One employee of the Boilermakers Union | $15,000 |
| 20 | NEWTON JONES, WILLIAM CREEDEN, KATHY STAPP, and LAWRENCE MCMANAMON | Apr. 8-May 2, 2022 | Santa Caterina and Paestum, Italy | WILLIAM CREEDEN, LAWRENCE MCMANAMON, Employee Number One, Employee Number Two, and two additional employees of the Boilermakers Union | $75,000 |
| 21 | NEWTON JONES, WILLIAM CREEDEN, KATHY STAPP, KATERYNA JONES, and LAWRENCE MCMANAMON | May 6-11, 2022 | York/Sheffield, Great Britain | NEWTON JONES, KATERYNA JONES, LAWRENCE MCMANAMON, Coconspirator One, and four additional employees of the Boilermakers | $120,000 |

| | | | | Union | |
|---|---|---|---|---|---|
| 22 | NEWTON JONES, WILLIAM CREEDEN, and KATHY STAPP | June 6-11, 2022 | Bilbao, Spain | Four employees of the Boilermakers Union | $60,000 |
| 23 | NEWTON JONES, WILLIAM CREEDEN, and KATHY STAPP | June 18-25, 2022 | Amsterdam, Netherlands and Geneva, Switzerland | Four employees of the Boilermakers Union | $60,000 |
| 24 | NEWTON JONES, WILLIAM CREEDEN, and KATHY STAPP | July 14, 2022 | London to North Carolina | One official of an English union of salaried rail workers | $15,000 |
| 25 | NEWTON JONES, WILLIAM CREEDEN, and KATHY STAPP | July 25, 2022 | Italy | One employee of the Boilermakers Union | $15,000 |
| 26 | NEWTON JONES, WILLIAM CREEDEN, KATHY STAPP, and KATERYNA JONES | Sept. 3-7, 2022 | Berlin, Germany | KATERYNA JONES | $15,000 |
| 27 | NEWTON JONES, WILLIAM CREEDEN, and KATHY STAPP | Oct. 16-21, 2022 | Bremen, Germany | Three employees of the Boilermakers Union | $45,000 |
| 28 | NEWTON JONES, WILLIAM CREEDEN, and KATHY STAPP | Jan. 24, 2023 | Berlin, Germany | WILLIAM CREEDEN | $15,000 |
| 29 | NEWTON JONES, WILLIAM CREEDEN, KATHY STAPP, and KATERYNA JONES | Feb. 3-Mar. 6, 2023 | Berlin, Germany | NEWTON JONES and KATERYNA JONES | $30,000 |
| 30 | NEWTON JONES, WILLIAM CREEDEN, and KATHY STAPP | June 3-10, 2023 | Norway, Belgium, France | One employee of the Boilermakers Union | $15,000 |
| 31 | NEWTON JONES, WILLIAM CREEDEN, and KATHY STAPP | June 17-24, 2023 | Cape Town, South Africa | Two employees of the Boilermakers Union | $30,000 |
| 32 | NEWTON JONES, WILLIAM CREEDEN, and KATHY STAPP | June 24-July 4, 2023 | Silica Hotel at the Blue Lagoon-Grindavik-Iceland | WILLIAM CREEDEN | $15,000 |
| 33 | NEWTON JONES, WILLIAM CREEDEN, and KATHY STAPP | Oct. 10-14, 2023 | Steinbach, Germany | One employee of the Boilermakers Union | $15,000 |

All in violation of Title 29, United States Code, Section 501(c) and Title 18, United States Code, Section 2.

## COUNT THIRTY-FOUR

### (29 U.S.C. § 501(c))
### (Embezzlement from a Labor Organization)
### (Restaurant and Merchandise Charges)

1.    The allegations contained in paragraphs 1 through 27 of the General Allegations of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

2.    From on or about September 2019 to on or about August 2023, in the District of Kansas and elsewhere, Defendants NEWTON JONES, KATERYNA JONES, WILLIAM CREEDEN, and KATHY STAPP, aided and abetted by each other and by others known to the grand jury, while employed directly and indirectly by the Boilermakers Union, and others known and unknown to the grand jury, did embezzle, steal and unlawfully and willfully abstract and convert to their own use and to use of others the moneys, property and other assets of said labor organization, the Boilermakers Union, to wit: approximately $38,019.39 in personal restaurant and merchandise charges on the Boilermakers Union credit card which were not necessary to achieve the Boilermakers Union's objectives or for its benefit.

All in violation of Title 29, United States Code, Section 501(c) and Title 18, United States Code, Section 2.

## **COUNT THIRTY-FIVE**

### **(29 U.S.C. § 501(c))**
### **(Embezzlement from a Labor Organization)**
### **(Wage Embezzlement)**

1.    The allegations contained in paragraphs 1 through 27 of the General Allegations of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

2.    From on or about September 2019 to on or about August 2023, in the District of Kansas and elsewhere, Defendants NEWTON JONES, WILLIAM CREEDEN, KATERYNA JONES, and KATHY STAPP, aided and abetted by each other and by others known to the grand jury, while employed directly and indirectly by the Boilermakers Union, and others known and unknown to the grand jury, did embezzle, steal and unlawfully and willfully abstract and convert to their own use and to the use of others the moneys, property and other assets of said labor organization, the Boilermakers Union, to wit: approximately $587,981.85 in unauthorized salary payments paid to, and benefit contributions on behalf of, Defendant KATERYNA JONES for which she was not required to work and, in furtherance of, performed little or no productive work.

All in violation of Title 29, United States Code, Section 501(c) and Title 18, United States Code, Section 2.

## COUNT THIRTY-SIX

### (29 U.S.C. § 501(c))
### (Embezzlement from a Labor Organization)
### (Wage Embezzlement)

1.    The allegations contained in paragraphs 1 through 27 of the General Allegations of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

2.    From on or about September 2019 to on or about August 2023, in the District of Kansas and elsewhere, Defendants NEWTON JONES, WILLIAM CREEDEN, CULLEN JONES, and KATHY STAPP, aided and abetted by each other and by others known to the grand jury, while employed directly and indirectly by the Boilermakers Union, and others known and unknown to the grand jury, did embezzle, steal and unlawfully and willfully abstract and convert to their own use and to use of others the moneys, property and other assets of said labor organization, the Boilermakers Union, to wit: approximately $413,340.03 in unauthorized salary payments to, and benefit contributions on behalf of, Defendant CULLEN JONES for which he was not required to work and, in furtherance of, performed little or no productive work.

All in violation of Title 29, United States Code, Section 501(c) and Title 18, United States Code, Section 2.

## COUNTS THIRTY-SEVEN and THIRTY-EIGHT

**(29 U.S.C. § 501(c))**
**(Embezzlement from a Labor Organization)**
**(Wage Embezzlement)**

1.    The allegations contained in paragraphs 1 through 27 of the General Allegations of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

2.    From on or about September 2019 to on or about February 2024, in the District of Kansas and elsewhere, Defendants NEWTON JONES, WILLIAM CREEDEN, and KATHY STAPP, aided and abetted by each other and by others known to the grand jury, while employed directly and indirectly by the Boilermakers Union, and others known and unknown to the grand jury, did embezzle, steal and unlawfully and willfully abstract and convert to their own use and to use of others the moneys, property and other assets of said labor organization, the Boilermakers Union, to wit: approximately $330,000 in unauthorized salary increases for Employees One and Two for which each performed no additional productive work as set forth below:

| Count | Employee | Title | Accumulated Income From Unauthorized Salary Increases |
|---|---|---|---|
| 37 | Employee Number One | Graphic Artist | $98,413.02 |
| 38 | Employee Number Two | Computer Technician | $231,367.61 |

All in violation of Title 29, United States Code, Section 501(c) and Title 18,

United States Code, Section 2.

## COUNT THIRTY-NINE and FORTY

### (29 U.S.C. § 501(c))
### (Embezzlement from a Labor Organization)
### (Relocation Expenses)

1.    The allegations contained in paragraphs 1 through 27 of the General Allegations of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

2.    From on or about September 2019 to on or about August 2023, in the District of Kansas and elsewhere, Defendants NEWTON JONES, WILLIAM CREEDEN, and KATHY STAPP, aided and abetted by each other and by others known to the grand jury, while employed directly and indirectly by the Boilermakers Union, and others known and unknown to the grand jury, did embezzle, steal and unlawfully and willfully abstract and convert to their own use and to use of others the moneys, property and other assets of said labor organization, the Boilermakers Union, to wit:   approximately $46,019.17 in relocation expenses which were not necessary to achieve the Boilermakers Union's objectives or for its benefit, as set forth below:

| Count | Recipients | Approximate Dates | Description | Amount |
|-------|-----------|-------------------|-------------|--------|
| **39** | Employees Number One and Two | August 2019 to June 2020 | Relocation Expenses from Boone, North Carolina to Kansas City, Missouri and monthly rent | $17,754.22 |
| **40** | Employees Number One and Two | June 2020 to June 2021 | Relocation from Kansas City, Missouri to Chapel | $25,814.19 |

| | | | Hill, North Carolina and one year's rent | |
|---|---|---|---|---|

All in violation of Title 29, United States Code, Section 501(c) and Title 18, United States Code, Section 2.

## COUNT FORTY-ONE through FORTY-SIX

**(29 U.S.C. § 501(c))**
**(Embezzlement from a Labor Organization)**
**(Vacation Payouts)**

1.     The allegations contained in paragraphs 1 through 27 of the General Allegations of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

2.     From on or about September 2019 to on or about August 2023, in the District of Kansas and elsewhere, Defendants NEWTON JONES, WILLIAM CREEDEN, WARREN FAIRLEY, KATERYNA JONES, CULLEN JONES, LAWRENCE McMANAMON, and KATHY STAPP, aided and abetted by each other and by others known to the grand jury, while employed directly and indirectly by the Boilermakers Union, and others known and unknown to the grand jury, did embezzle, steal and unlawfully and willfully abstract and convert to their own use and to use of others the moneys, property and other assets of said labor organization, the Boilermakers Union, to wit: vacation payouts contrary to the policies of the Boilermakers Union and for periods when the individuals below had otherwise already expended all their allotted vacation time as set forth below:

| Count | Defendants | Recipient of Payout | Title | Cumulative Unauthorized Vacation Cash Payouts (September 2019-2023) |
|-------|------------|---------------------|-------|---------------------------------------------------------------------|
| 41 | NEWTON JONES. | NEWTON JONES | International President | $157,886.95 |

| | | | | |
|---|---|---|---|---|
| | WILLIAM CREEDEN, and KATHY STAPP | | | |
| 42 | NEWTON JONES. WILLIAM CREEDEN, and KATHY STAPP | WILLIAM CREEDEN | International Secretary-Treasurer | $413,478.24 |
| 43 | NEWTON JONES. WILLIAM CREEDEN, KATHY STAPP, and WARREN FAIRLEY | WARREN FAIRLEY | International Vice-President | $51,712.08 |
| 44 | NEWTON JONES. WILLIAM CREEDEN, KATHY STAPP, and KATERYNA JONES | KATERYNA JONES | Special Assistant to the International President | $118,673.01 |
| 45 | NEWTON JONES. WILLIAM CREEDEN, KATHY STAPP, and LAWRENCE McMANAMON | LAWRENCE McMANAMON | International Vice-President | $51,713.20 |
| 46 | NEWTON JONES. WILLIAM CREEDEN, KATHY STAPP, and CULLEN JONES | CULLEN JONES | Video Technician/Film Project Coordinator | $73,753.83 |

All in violation of Title 29, United States Code, Section 501(c) and Title 18, United States Code, Section 2.

## COUNT FORTY-SEVEN

### (29 U.S.C. § 501(c))
### (Embezzlement from a Labor Organization)
### (Forensic Surveillance)

1.    The allegations contained in paragraphs 1 through 27 of the General Allegations of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

2.    From on or about April 2023 to on or about October 2023, in the District of Kansas and elsewhere, Defendants NEWTON JONES and WILLIAM CREEDEN, aided and abetted by each other and by others known to the grand jury, while employed directly and indirectly by the Boilermakers Union, and others known and unknown to the grand jury, did embezzle, steal and unlawfully and willfully abstract and convert to their own use and to use of others the moneys, property and other assets of said labor organization, the Boilermakers Union, to wit: approximately $185,000 in unauthorized expenses for forensic surveillance performed by an outside firm and legal services by the Boilermakers Union's former law firm for the personal benefit of Defendant NEWTON JONES and LAWRENCE McMANAMON and which were not necessary to achieve the Boilermakers Union's objectives or for its benefit.

All in violation of Title 29, United States Code, Section 501(c) and Title 18, United States Code, Section 2.

## COUNT FORTY-EIGHT

**(29 U.S.C. § 501(c))**
**(Embezzlement from a Labor Organization)**
**(Unauthorized Loans)**

1.    The allegations contained in paragraphs 1 through 27 of the General Allegations of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

2.    From on or about September 2021 to on or about August 2023, in the District of Kansas and elsewhere, Defendants NEWTON JONES and WILLIAM CREEDEN, aided and abetted by each other and by others known to the grand jury, while employed directly and indirectly by the Boilermakers Union, and others known and unknown to the grand jury, did embezzle, steal and unlawfully and willfully abstract and convert to their own use and to use of others the moneys, property and other assets of said labor organization, the Boilermakers Union, to wit: $7,000,000 in unauthorized loans from the Boilermakers Union MORE Fund to the Bank of Labor contrary to the terms of section 501(a) of the LMRDA, Articles 5.2 and 6 of Boilermakers Constitution, and Boilermakers Conflict of Interest Policy.

All in violation of Title 29, United States Code, Section 501(c) and Title 18, United States Code, Section 2.

## COUNT FORTY-NINE

**(18 U.S.C. §§ 1347 and 1349)**
**(Health Care Fraud Conspiracy)**

1.    The allegations contained in paragraphs 1 through 27 of the General Allegations of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

2.    Beginning at least as early as January 2015, and continuing at least through June 2024, the exact dates being unknown to the Grand Jury, in the District of Kansas and elsewhere, Defendants NEWTON JONES, WILLIAM CREEDEN, KATERYNA JONES, CULLEN JONES, and KATHY STAPP, and other persons both known and unknown to the Grand Jury, did knowingly and willfully conspire to commit health care fraud, in violation of 18 U.S.C. § 1347, namely: to execute or attempt to execute a scheme and artifice to defraud the Boilermakers Health Care Plan and to obtain by means of false and fraudulent pretenses, representations, and promises, the money and property owned by, and under the custody and control of the Boilermakers Health Care Plan in connection with the delivery of and payment for health care benefits, items, and services.

### The Objectives of the Conspiracy

3.    It was an objective of the conspiracy that Defendants NEWTON JONES, WILLIAM CREEDEN, and KATHY STAPP would use false and fraudulent

pretenses, representations, and promises to cause the enrollment of Defendants KATERYNA JONES, CULLEN JONES, and Individual Number One in the Boilermakers Health Care Plan even though Defendants KATERYNA JONES and CULLEN JONES and Individual Number One were not full-time employees of the Boilermakers Union and not eligible to participate in the Boilermakers Health Care Plan.

4.   It was an objective of the conspiracy that Defendants NEWTON JONES, WILLIAM CREEDEN, and KATHY STAPP would defraud the Boilermakers Health Care Plan and use false and fraudulent pretenses, representations, and promises to obtain the money or property of the Boilermakers Health Care Plan in the form of reimbursement for medical care for Defendants KATERYNA JONES, CULLEN JONES, and Individual Number One and his descendants when they were not eligible to obtain that money and property because Defendants KATERYNA JONES, CULLEN JONES, and Individual Number One were not full time employees of Boilermakers Union and not eligible to participate in the Boilermakers Health Care Plan.

## Manner and Means of the Conspiracy

5.   It was a part of the conspiracy that Defendants NEWTON JONES, WILLIAM CREEDEN, and KATHY STAPP would make it appear that Defendants KATERYNA JONES and CULLEN JONES were full-time employees of the

Boilermakers Union scheduled to work at least 30 hours per week, in order to participate in the Boilermakers Health Care Plan, when, in fact, Defendants KATERYNA JONES and CULLEN JONES were not fulltime employees scheduled to work at least 30 hours per week.

6.    It was part of the conspiracy that Defendants KATERYNA JONES and CULLEN JONES would falsely represent that they were eligible for participation in the Boilermakers Union Health Care Plan to various medical providers to receive delivery of medical treatment, and receive reimbursement payments for the expenses of medical treatment, from the Boilermakers Union Health Care Plan.

7.    It was a part of the conspiracy that Defendants NEWTON JONES, WILLIAM CREEDEN, and KATHY STAPP would place Individual Number One on the Boilermakers Union payroll in April 2018 as "Assistant to the International President" in order to provide health care insurance to him and his family members when he was undergoing treatment for a terminal illness in New York and would provide no work for the Boilermakers Union.

8.    It was a part of the conspiracy that Defendants NEWTON JONES, WILLIAM CREEDEN, and KATHY STAPP would falsely represent to the Boilermakers Union Health Care Plan in May 2018 that Individual Number One began working for the Boilermakers Union on January 1, 2018, when in fact, they had not placed Individual Number One on the payroll until late April 2018 in order to allow

him to skirt the eligibility rules of the plan which required an individual to actually work for ninety (90) days before becoming covered by the plan.

9.    It was a part of the conspiracy that Defendants NEWTON JONES, WILLIAM CREEDEN, and KATHY STAPP would pay Individual Number One as an employee of the Boilermakers Union until June 30, 2018, and provide a death benefit to his family, when Individual Number One passed away on June 1, 2018, and to permit to the Boilermakers Union Health Care Plan to provide medical reimbursements to the surviving descendants of Individual Number One even though neither he nor his family were eligible to participate in the Boilermakers Union Health Care Plan at any time.

All in violation of Title 18, United States Code, Sections 1347, 1349 and 2.

## COUNT FIFTY through FIFTY-TWO

## (18 U.S.C. § 669)
## (Theft in connection with health care)

1.    The allegations contained in paragraphs 1 through 27 of the General Allegations of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

2.    From on or about September 2019 to on or about June 2024, in the District of Kansas and elsewhere, Defendants NEWTON JONES, WILLIAM CREEDEN, KATERYNA JONES, CULLEN JONES, and KATHY STAPP, aided and abetted by each other and by others known to the grand jury, did knowingly and willfully embezzle, steal, or otherwise without authority convert to the use of any person other than the rightful owner, or intentionally misapply the moneys, funds, securities, premiums, credits, property, or other assets of Boilermakers Union Health Care Plan, a health care benefit program, in the approximate amount as set forth below:

| Count | Defendants | Recipient | Cumulative Reimbursement for Medical Care from the Boilermakers Union Health Care Plan (August 2019-June 2024) |
|---|---|---|---|
| 50 | NEWTON JONES, WILLIAM CREEDEN, KATERYNA JONES, and KATHY STAPP | KATERYNA JONES | $3,903.16 |
| 51 | NEWTON JONES, WILLIAM | CULLEN JONES | $18,026.07 |

|  | CREEDEN, CULLEN JONES, and KATHY STAPP |  |  |
|---|---|---|---|
| **52** | NEWTON JONES, WILLIAM CREEDEN, and KATHY STAPP | Individual Number One and his descendants | $14,082.85 |

All in violation of Title 18, United States Code, Sections 669 and 2.

## COUNT FIFTY-THREE

## (18 U.S.C. §§ 1343, 1349)
## (Wire Fraud Conspiracy)

1.   The allegations contained in paragraphs 1 through 27 of the General Allegations of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

2.   Beginning at least as early as January 2009, and continuing at least through August 2024, both dates being approximate, the exact dates being unknown to the Grand Jury, in the District of Kansas and elsewhere, Defendants NEWTON JONES and WILLIAM CREEDEN, and other persons both known and unknown to the Grand Jury, did unlawfully, and knowingly devise and intend to devise a scheme and artifice to defraud the Bank of Labor and its depositors and to obtain by means of false and fraudulent pretenses, representations, and promises, the money and property owned by the Bank of Labor.

## The Scheme to Defraud

3.   It was part of the scheme and artifice to defraud devised by Defendants NEWTON JONES and WILLIAM CREEDEN to falsely represent that they were working fulltime as Chief Executive Officer and Senior Executive Vice-President, respectively, for the Bank of Labor, when in fact, neither Defendant NEWTON JONES nor WILLIAM CREEDEN were performing any productive work for the

Bank of Labor in those positions.

4.  It was part of the scheme and artifice to defraud devised by Defendants NEWTON JONES and WILLIAM CREEDEN to deprive the Bank of Labor of salary payments, benefit contributions, and other paid benefits as employees of the Bank of Labor when Defendants JONES and CREEDEN were not required to work, and provided little or no productive work, for the Bank of Labor in exchange for those salary payments, benefit contributions, and paid benefits as employees.

## Manner and Means of the Scheme to Defraud

5.  It was part of the conspiracy that Defendant NEWTON JONES would appoint himself Chief Executive Officer and Defendant WILLIAM CREEDEN as Senior Executive Vice President, both employment positions with the Bank of Labor.

6.  It was part of said scheme and artifice that Defendant NEWTON JONES would receive approximately $4,000,000 in salaries, yearly bonuses, 401(k) contributions, life insurance, and cash payments for unused personal time as Senior Executive Vice President of the Bank of Labor while performing no additional duties from his position as a member of the board of directors of the Bank of Labor.

7.  It was part of said scheme and artifice that Defendant WILLIAM CREEDEN would receive approximately $3,400,000 in salaries, yearly bonuses, 401(k) contributions, life insurance, and cash payments for unused personal time as Senior Executive Vice President of the Bank of Labor while performing no additional duties

from his position as a member of the board of directors of the Bank of Labor.

9.   It was part of the conspiracy that Defendant NEWTON JONES and WILLIAM CREEDEN would file their LM-30 reports each year listing the director's fees and incidental meals they received from the Bank of Labor as a party "dealing with" the Boilermakers Union, but falsely omit the salaries, yearly bonuses, stock options, 401(k) contributions, insurance, and cash payments for unused personal time they received from the Bank of Labor each year pursuant to the false representation that they were working as fulltime employees of the Bank of Labor.

10.   It was part of the conspiracy that that Defendant NEWTON JONES and WILLIAM CREEDEN would violate the Boilermakers Conflict of Interest Policy by failing to disclose the conflict of interest caused by their compensation as employees of the Bank of Labor in written form on an annual basis for entry into the minutes of the Executive Council.

11.   It was part of said scheme and artifice that Defendant NEWTON JONES and WILLIAM CREEDEN would violate the Boilermakers Conflict of Interest Policy by failing to abstain from participating in any discussions or deliberations with respect to the Boilermakers Union's dealings with the Bank of Labor, and by using their personal influence to affect deliberations, making motions, voting, executing agreements, and "taking similar actions on behalf of the organizations where the conflict of interest might pertain by law, agreement, or otherwise."

## Execution of the Scheme to Defraud

12.    On or about the dates listed below, in the District of Kansas and elsewhere,

Defendants NEWTON JONES and WILLIAM CREEDEN and other persons both

known and unknown to the Grand Jury, having devised and intending to devise the

aforementioned scheme and artifice to defraud described in paragraphs 3 and 4 above

under "The Scheme to Defraud" and for the purpose of executing said scheme and

artifice and attempting to do so, did transmit and cause to be transmitted in interstate

and foreign commerce, by means of wire communications, certain writings, that is,

transmission of electronic mail, as indicated below:

| Date | Point of Origin | Point of Reception | Purpose |
|---|---|---|---|
| Biweekly Email Transactions from September 2019 to August 2023 | Bank of Labor – Kansas | Dayforce - Human resource consulting firm in Bloomington, Minnesota | Report of hours purportedly worked and communication of earnings and benefit information for NEWTON JONES and WILLIAM CREEDEN |
| Biweekly Email Transactions from September 2019 to August 2023 | Bank of Labor – Kansas | Wells Fargo Bank – North Carolina | $1000 Direct Deposit to NEWTON JONES Account at Wells Fargo Bank ending in 1932 |
| July 10, 2020 | bcreeden@boilermakers.org | njones@boilermakers.org rick.worner@gmail.com | Request for supplemental life insurance by for NEWTON JONES and WILLIAM CREEDEN |
| July 22, 2020 | njones@boilermakers.org | bmcall@bankoflabor.com | Inquiry by NEWTON JONES over withdrawing money from his Bank of Labor Retirement Plan account |
| September 3, 2020 | bmcall@bankoflabor.com | njones@boilermakers.org bcreeden@boilermakers.org | Notification of execution of supplemental life insurance for |

| | | | NEWTON JONES and WILLIAM CREEDEN |
|---|---|---|---|
| October 27, 2021 | bcreeden@boilermakers.org | vcarey@bankoflabor.com njones@boilermakers.org | Request for 2020-21 breakdown of salary, payroll taxes, bonuses, phantom stock, vehicles, life insurance, etc. for NEWTON JONES and WILLIAM CREEDEN |
| January 1, 2021 | jturner@bankoflabor.com | bcreeden@boilermakers.org | Request for WILLIAM CREEDEN to execute deferral agreement for Bank of Labor Retirement Plan |

All in violation of Title 18, United States Code, Sections 1343, 1349, and 2.

## COUNT FIFTY-FOUR and FIFTY-FIVE

**(18 U.S.C. § 664)**
**(Theft From an ERISA Program)**
**(Retirement Benefits for Ineligible Individuals)**

1.    The allegations contained in paragraphs 1 through 27 of the General Allegations of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

2.    From on or about September 2019 to on or about August 2024, in the District of Kansas and elsewhere, Defendants NEWTON JONES and WILLIAM CREEDEN, aided and abetted by each other and by others known to the grand jury, did embezzle, steal and unlawfully and willfully abstract and convert to their own use and the use of another the moneys, funds, securities, premiums, credits, property and other assets of the Bank of Labor Retirement Plan, an employee pension benefit plan, subject to Title I of the Employee Retirement Income Security Act of 1974, in benefit payments to ineligible individuals, as set forth below:

| Count | Recipient | Cumulative Retirement Payments from the Bank of Labor Retirement Plan (2019-August 2024) |
|-------|-----------|-------------------------------------------------------------------------------------------|
| 54 | NEWTON JONES | $703,238.31 |
| 55 | WILLIAM CREEDEN | $740,642.07 |

All in violation of Title 18, United States Code, Sections 664 and 2.

## COUNT FIFTY-SIX and FIFTY-SEVEN

### (18 U.S.C. § 664)
### (Theft From an ERISA Program)
### (Retirement Benefits for Ineligible Individuals)

1.    The allegations contained in paragraphs 1 through 27 of the General Allegations of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

2.    From on or about September 2019 to on or about August 2024, in the District of Kansas and elsewhere, Defendants NEWTON JONES and WILLIAM CREEDEN, aided and abetted by each other and by others known to the grand jury, did embezzle, steal and unlawfully and willfully abstract and convert to their own use and the use of another the moneys, funds, securities, premiums, credits, property and other assets of the Boilermaker-Blacksmith National Pension Trust, an employee pension benefit plan, subject to Title I of the Employee Retirement Income Security Act of 1974 in benefit payments whose amounts were calculated upon more hours they actually worked for the Boilermakers Union, as set forth below:

| Count | Recipient | Current Monthly Disbursement from the Boilermaker-Blacksmith National Pension Trust |
|---|---|---|
| 56 | NEWTON JONES | $12,012.16 |
| 57 | WILLIAM CREEDEN | $10,087.60 |

All in violation of Title 18, United States Code, Sections 664 and 2.

## <u>FORFEITURE NOTICE</u>

1.      The allegations contained in all the preceding paragraphs and Counts One through Fifty-Seven of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 1963, and Title 28, United States Code, Section 2461(c).

2.      Upon conviction of the offense set out in Count One of the Indictment, defendants,

NEWTON JONES,
WILLIAM CREEDEN,
KATERYNA JONES,
WARREN FAIRLEY,
LAWRENCE McMANAMON,
CULLEN JONES, and
KATHY STAPP,

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 1963:

A.   any interest acquired or maintained in violation of Title 18, United States Code, Section 1962;

B.   any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise which the defendants established, operated, controlled, conducted, or participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and

C. any property constituting, or derived from, any proceeds obtained,

directly or indirectly, from racketeering activity in violation of 1962.

3. The property to be forfeited is estimated to be approximately $20,000,000 and includes, but is not limited to:

A. the money and property taken, obtained or acquired by defendants in violation of Title 18, United States Code, Section 1962;

B. any and all of the defendants' respective rights, titles, interests, memberships, and positions in the Boilermakers Union.

C. a forfeiture money judgment imposed against each defendant in an amount equal to the amount of proceeds obtained or derived by him or her from the commission of Count One; and

D. a forfeiture money judgment imposed against each defendant in an amount equal to the value of any interest acquired or maintained in violation of Title 18, United States Code, Section 1962.

4. Upon conviction of one or more of the offenses set out in Counts Two through Fifty-Seven of the Indictment, the defendants,

NEWTON JONES (Counts 2-48, 53, 54,56),
WILLIAM CREEDEN (Counts 2-48, 53, 55, 57),
KATERYNA JONES (Counts 6, 10-11, 16, 21, 26, 29,34-35, 44, 49-50),
WARREN FAIRLEY (Counts 5, 7, 9, 10, 11, 16, 21, 23),
LAWRENCE McMANAMON (Counts 10, 11, 16, 20, 21, 45),
CULLEN JONES (Counts 36, 46), and
KATHY STAPP (Counts 2-46),

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses. The property to be forfeited includes, but is not limited to, the following:

      A.  a forfeiture money judgment imposed against each defendant in an amount equal to the amount of proceeds obtained or derived by him or her from the commission of their respective Counts of the Indictment.

5.      Upon conviction of the offenses set forth in Counts 11 and 12 of the Indictment, the defendants,

NEWTON JONES,
WILLIAM CREEDEN,
KATERYNA JONES,
CULLEN JONES, and
KATHY STAPP,

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses including, but not limited, to the following:

      A.  a forfeiture money judgment imposed against each defendant in an amount equal to the amount of gross proceeds obtained or derived by him or her from the commission of Counts 49 through 52.

6.      If any of the property described in this Notice of Forfeiture as set out

above, as a result of any act or omission of the defendants, NEWTON JONES, WILLIAM CREEDEN, KATERYNA JONES, WARREN FAIRLEY, LAWRENCE MCMANAMON, CULLEN JONES, and KATHY STAPP:

      A.   cannot be located upon the exercise of due diligence;

      B.   has been transferred or sold to, or deposited with, a third party;

      C.   has been placed beyond the jurisdiction of the court;

      D.   has been substantially diminished in value; or

      E.   has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p) and Title 18, United States Code, Section 1963(m).

All pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(7), and 1963, 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c).

A TRUE BILL:

_s/ Foreperson_____

FOREPERSON OF THE GRAND JURY

KATE E. BRUBACHER
UNITED STATES ATTORNEY

By:    _/s/ Faiza H. Alhambra_____
        FAIZA ALHAMBRA
        Assistant United States Attorney
        500 State Avenue, Suite 360
        Kansas City, Kansas 66101
        913-551-6904
        913-551-6541 (fax)
        Faiza.Alhambra@usdoj.gov
        Kan. S. Ct. No. 24525

By:    _/s/ Jabari B. Wamble_____
        JABARI WAMBLE
        Assistant United States Attorney
        500 State Avenue, Suite 360
        Kansas City, Kansas 66101
        913-551-6730
        913-551-6541 (fax)
        Jabari.wamble@usddoj.gov
        Kan. S. Ct. No. 22730

By:    _/s/ Vincent Falvo_____
        VINCENT FALVO
        Trial Attorney
        Violent Crime and Racketeering Section
        United States Department of Justice
        1301 New York Avenue, NW, Room 753
        Washington, D.C. 20530
        (202) 353-9384
        vincent.falvo@usdoj.gov

## **PENALTIES**

**Count 1: Racketeering Conspiracy- 18 U.S.C. § 1962(d)**

- Punishable by a term of imprisonment of not more than 20 years. 18 U.S.C. § 1963(a);

- A term of supervised release of not more than 3 years. 18 U.S.C. § 3583(b)(3);

- A fine not to exceed $250,000, or, if any person derives pecuniary gain from the offense, or if the offense results in pecuniary loss to a person other than the defendant, the defendant may be fined not more than the greater of twice the gross gain or twice the gross loss. 18 U.S.C. § 3571; 18 U.S.C. § 3583(a)(3);

- Forfeiture. 18 U.S.C. § 1963;

- A mandatory special assessment of $100.00. 18 U.S.C. § 3013(a)(2)(A).

**Counts 2 through 48: Embezzlement of Labor Union Assets, 29 U.S.C. § 501(c)**

- Punishable by a term of imprisonment of not more than five (5) years.   29 U.S.C. § 501(c);

- A term of supervised release of not more than three (3) years.   18 U.S.C. § 3583(b)(2);

- A fine not to exceed $10,000, or, if any person derives pecuniary gain from the offense, or if the offense results in pecuniary loss to a person other than the defendant, the defendant may be fined not more than the greater of twice the gross gain or twice the gross loss, unless imposition of a fine under this subsection would unduly complicate or prolong the sentencing process. 29 U.S.C. § 501(c); 18 U.S.C. § 3571(d);

- A mandatory special assessment of $100.00.   18 U.S.C. § 3013(a)(2)(A);

- Forfeiture

**Count 49: Health Care Fraud Conspiracy, 18 U.S.C. § 1349**

- Punishable by a term of imprisonment of not more than twenty (20) years. 18 U.S.C. § 1341.

- A term of supervised release of not more than three (3) years. 18 U.S.C. § 3583(b)(2).

- A fine not to exceed $250,000. 18 U.S.C. § 3571(b)(3). In the alternative, the defendant may be fined not more than the greater of twice the gross gain or twice the gross loss. 18 U.S.C. § 3571(d).

- A mandatory special assessment of $100.00. 18 U.S.C. § 3013(a)(2)(A).

- Forfeiture.

**Counts 50 through 52: Theft in Connection with Health Care, 18 U.S.C. § 669**

- Punishable by a term of imprisonment of not more than ten (10) years.   18 U.S.C. § 669;

- A term of supervised release of not more than three (3) years.   18 U.S.C. § 3583(b)(2);

- A fine not to exceed $250,000. 18 U.S.C. § 3571(b)(3). In the alternative, the defendant may be fined not more than the greater of twice the gross gain or twice the gross loss. 18 U.S.C. § 3571(d).

- A mandatory special assessment of $100.00.   18 U.S.C. § 3013(a)(2)(A);

- Forfeiture

**Count 53: Wire Fraud Conspiracy, 18 U.S.C. § 1343**

- Punishable by a term of imprisonment of not more than twenty (20) years. 18 U.S.C. § 1343.

- A term of supervised release of not more than three (3) years. 18 U.S.C. § 3583(b)(2).

- A fine not to exceed $250,000. 18 U.S.C. § 3571(b)(3). In the alternative, the defendant may be fined not more than the greater of twice the gross gain or twice the gross loss. 18 U.S.C. § 3571(d).

- Forfeiture

- A mandatory special assessment of $100.00. 18 U.S.C. § 3013(a)(2)(A).

**Counts 54-57: Theft from an ERISA Program) (Retirement Benefits for Ineligible Individuals, 18 U.S.C. § 664**

- Punishable by a term of imprisonment of not more than ten (10) years.   18 U.S.C. § 664;

- A term of supervised release of not more than three (3) years.   18 U.S.C. § 3583(b)(2);

- A fine not to exceed $250,000. 18 U.S.C. § 3571(b)(3). In the alternative, the defendant may be fined not more than the greater of twice the gross gain or twice the gross loss. 18 U.S.C. § 3571(d).

- A mandatory special assessment of $100.00.   18 U.S.C. § 3013(a)(2)(A);

- Forfeiture